**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DEANDRE MANOKEY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-23-1161** |
| **RELIABLE CONTRACTING** | * | |
| **COMPANY, INC.,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

**MEMORANDUM OPINION**

Plaintiff DeAndre Manokey initiated the above-captioned action against his former employer, Reliable Contracting Company, Inc. (RCC) on May 2, 2023, alleging a state-law wrongful termination claim and discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*; and the Maryland Fair Employment Practices Act (MFEPA), Md. Code, State Gov't § 20-601 *et seq.*; and seeking damages, equitable relief, and attorney's fees and costs. ECF No. 1. Pending before the Court is RCC's motion for summary judgment. ECF No. 37. The motion is fully briefed and no hearing is necessary. ECF Nos. 37, 41–42; Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, RCC's motion is granted.

I.    **Background**

Mr. Manokey's Complaint pleads five counts.[1] ECF No. 1. Under Title VII, he pleads race discrimination (Count I). Under the ADA, he pleads disability discrimination (Count II) and

---

[1]  The Complaint alleges two violations that are identified as "Count II" and two violations that are identified as "Count IV." For the sake of clarity, the Court will refer to these four counts in the order in which they are alleged (Counts II–V).

retaliation (Count III).  Mr. Manokey also alleges that RCC wrongfully terminated him (Count IV) and violated MFEPA (Count V).

### A.    Factual Background

Mr. Manokey was employed as a dump truck driver with RCC beginning in 2018.  ECF Nos. 37-1 at 1; 37-2 at 34:13–35:7, 37:9–16.[2]  In this role, he transported materials such as dirt and asphalt on construction sites. ECF No. 37-2 at 36:13–37:4.  On April 6, 2021, near the end of the workday at a work site in Pasadena, Maryland, another RCC truck struck Mr. Manokey's truck while Mr. Manokey was cleaning out his parked truck.  *Id*. at 228:8–12; ECF No. 41-5 at 3.  Mr. Manokey reported the accident to his supervisor Tod Wagner.  ECF Nos. 37-2 at 281:1–16; 41-5 at 4.  Mr. Manokey did not report the accident to any other individuals at RCC.  ECF No. 37-2 at 261:10–13 (testifying that "the only person I spoke to about the accident was Tod[]").  The parties dispute when and how other individuals at RCC learned of the accident.  *Compare* ECF No. 37 at 2 (asserting that Mr. Manokey "did not inform the foreman of the job site, Warren Johnson[;] Human Resources[;] or the Safety Department" of the accident) *and* ECF No. 37-5 ¶ 5 (attesting that Mr. Manokey never informed RCC's Safety Department that he had been in an accident) *with* ECF No. 37-2 at 290:17–20 (testifying that Mr. Johnson witnessed the accident) *and* ECF No. 41-5 at 3–4 (asserting that Mr. Wagner told Mr. Manokey that he would report the accident to RCC's Safety Department).

Mr. Manokey reported to work on April 7, 2021.  ECF No. 41-5 at 4–5.  The parties dispute whether Mr. Manokey told Mr. Wagner that day that he was feeling physical effects from the accident.  *Compare* ECF No. 37 at 2 (asserting that Mr. Manokey did not inform Mr. Wagner

---

[2]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document, except that page numbers of exhibits that are deposition transcripts refer to the page and line number of the deposition transcript.

of "any pain or discomfort as a result of the incident") *with* ECF No. 41-5 at 5 (asserting that Mr. Manokey told Mr. Wagner on April 7, 2021, that he "had taken an ibuprofen th[at] morning because [his] neck felt stiff, and [his] back was a little sore").  Mr. Manokey returned to work on April 8, 2021.  ECF No. 41-5 at 5.  That evening, Mr. Manokey "went to Patient First to be evaluated."  ECF No. 37-2 at 232:19–233:5, 8.  Around 8:00 pm, Mr. Wagner called Mr. Manokey, who informed Mr. Wagner that he was about to enter Patient First.  ECF No. 41-4 233:15–234:6; *see also* ECF No. 37 at 2.  A healthcare provider at Patient First determined that Mr. Manokey was unable to work from April 9, 2021, until April 12, 2021.  ECF No. 37-2 at 236:16–21.  The healthcare provider left a voicemail and sent a fax to RCC explaining Mr. Manokey's work restriction, both of which were received by Human Resource Manager Beth Thompson.  ECF No. 37-4 ¶¶ 2, 4.

On April 9, 2021, Mr. Manokey was not feeling well, so around 6:00 am he called Christina (last name unknown), RCC's dispatcher, to ask for the day off.  ECF Nos. 41-5 at 3; 41-4 at 234:11–14, 238:11–18.  Later that morning, Ms. Thompson called Mr. Manokey to discuss the information she had received from Patient First, why she had not been informed of the accident, Mr. Manokey's failure to properly report the accident and his time off, and RCC's applicable policies.  ECF Nos. 41-4 at 239:5–241:16; 41-5 at 3; 37-4 ¶¶ 3–7.  That same day, Mr. Manokey saw a healthcare provider at Multi-Specialty Healthcare, who determined that he was unable to work until April 23, 2021.  ECF Nos. 37-5 ¶ 4; 41-5 at 6–7; 41-7.  The healthcare provider faxed a disability form outlining Mr. Manokey's inability to work to RCC, which was received by Ms. Thompson on April 12, 2021.  ECF Nos. 37-5 ¶ 4; 41-7.  This form, dated April 9, 2021, indicated that Mr. Manokey "[wa]s disabled and therefore unable to perform his/her work duties from [blank] through 04/23/2021"; "[would] be re-evaluated in our offices at 2:00

PM on 04/23/21"; and was receiving physical therapy. ECF No. 41-7. Mr. Manokey did not communicate with Ms. Thompson about his inability to work. ECF No. 37-2 at 284:18–21.

On April 12, 2021, Robert Carrier, RCC's Risk Manager, called Mr. Manokey. ECF Nos. 37-5 ¶¶ 1, 7; 41-5 at 3. Mr. Manokey testified that Mr. Carrier was "screaming, hollering, cursing." ECF No. 37-2 at 262:5–10. According to Mr. Manokey, Mr. Carrier "was yelling they could have sent me to the best doctors in Annapolis." *Id.* at 262:15–19. Mr. Manokey further testified that during this conversation, he asked Mr. Carrier about being able to work light duty, to which Mr. Carrier replied in the negative. *Id.* at 267:15–16; *see also* ECF No. 41-5 at 3 (asserting that Mr. Carrier told Mr. Manokey "they did not have any light duty work"). Mr. Carrier attested that during this conversation he informed Mr. Manokey of the proper procedures for requesting time off. ECF No. 37-5 ¶ 7. Mr. Manokey did not inform Mr. Carrier during this conversation that he was unable to work until April 23, 2021. *Id.*; ECF No. 37-2 at 285:5–10.

Mr. Manokey testified that sometime between April 13 and 19, 2021, he called Mr. Wagner but did not reach him, did not leave a voicemail, and did not receive a call back. ECF No. 37-2 at 280:17–21, 283:13–17. Mr. Manokey further testified that he did not request "light duty" from Ms. Thompson or Mr. Wagner. *Id.* at 279:10–21, 280:5–6. According to Mr. Manokey, he did not return to work or communicate with anyone from RCC until he received a call from Ms. Thompson and Mr. Carrier on April 19, 2021. *Id.* at 289:1–9; *see also* ECF No. 37-4 ¶ 8 (attesting that Mr. Manokey did not report to work or call the office on April 10 or April 12–19). During this call, Ms. Thompson and Mr. Carrier informed Mr. Manokey that his employment was terminated because of his failure to comply with the accident reporting and attendance policies. ECF Nos. 37-2 at 289:3–290:12; 37-4 ¶ 11; 37-5 ¶ 12.

### B.     Administrative History

Mr. Manokey filed his first Charge of Discrimination (First Charge) with the Equal

Employment Opportunity Commission (EEOC) on April 28, 2021, alleging retaliation.  ECF No.

37-1.  Mr. Manokey's allegations in this charge center on the accident; his receipt of medical

treatment, absence from work, and filing of a workers compensation claim as a result of the

accident; and his discharge from employment, which he alleged was a result of his filing a

workers compensation claim.  *Id.*  The operative event in the First Charge was alleged to have

occurred on April 19, 2021, and was not identified as a "continuing action."[3]  *Id.*  Mr. Manokey

did not amend his First Charge, and the EEOC issued a Dismissal and Notice of Rights (right-to-

sue letter) on April 30, 2021.  ECF No. 37-7.  Mr. Manokey declined to file suit within the

prescribed deadline.  *Id.*

On November 18, 2021, Mr. Manokey filed his second Charge of Discrimination (Second

Charge), alleging discrimination based on race and disability in addition to retaliation.  ECF No.

41-9 at 1.  Mr. Manokey's Second Charge provides a more detailed account of the same set of

events outlined in his First Charge.  *Id.*  The Second Charge also identifies a broader range of

dates (April 6, 2021, to April 19, 2021), and identifies the alleged discrimination and retaliation

as a "continuing action."  *Id.*  Mr. Manokey alleges that the EEOC issued a right-to-sue letter on

the Second Charge on February 13, 2023.  ECF No. 1 ¶ 8.[4]  Mr. Manokey filed the instant action

on May 2, 2023.  ECF No. 1.

---

[3]  As set forth in the previous section, *supra* I.A., the events Mr. Manokey alleged in his First Charge occurred between April 6 and 19, 2021.

[4]  Neither party filed the second right-to-sue letter as an exhibit, but this fact does not appear to be in dispute.  *See* ECF Nos. 37 at 8; 37-8.

## II.    Standard of Review

Summary judgment motion practice "is properly regarded . . . as an integral part of the
Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive
determination of every action.'"  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting
Fed. R. Civ. P. 1).  Federal Rule of Civil Procedure 56 provides that the district court "shall grant
summary judgment if the movant shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very
terms, this standard provides that the mere existence of *some* alleged factual dispute between the
parties will not defeat an otherwise properly supported motion for summary judgment; the
requirement is that there be no *genuine* issue of *material* fact."  *Anderson* v. *Liberty Lobby, Inc.*,
477 U.S. 242, 247-248 (1986) (emphasis in original).  A material fact is one that "might affect
the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is
genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
party."  *Id.*

Thus, to defeat summary judgment, "all that is required is that sufficient evidence
supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties'
differing versions of the truth at trial."  *First Nat. Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253,
288-289 (1968).  On the other hand, summary judgment "is justified if, from the totality of the
evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits,
the court is satisfied that there is no genuine factual issue for trial and the moving party is
entitled to judgment as a matter of law."  *Sylvia Dev. Corp.* v. *Calvert C'nty, Md.*, 48 F.3d 810,
817 (4th Cir. 1995).

The Fourth Circuit Court of Appeals has cautioned that summary judgment "cannot be
granted merely because the court believes that the movant will prevail if the action is tried on the

merits." *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2728 (3d ed. 1998)). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001). To survive summary judgment, the nonmoving party must provide evidence, "not unsupported conjecture." *Graves* v. *Lioi*, 930 F.3d 307, 324 (4th Cir. 2019). Thus, "[h]earsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment." *Alston* v. *Astrue*, Civil Action No. L-10-3446, 2012 WL 665982, at *4 (D. Md. Feb. 28, 2012), *aff'd*, 474 Fed. Appx. 390 (4th Cir. 2012).

## III.    Discussion

RCC argues that summary judgment is appropriate because Mr. Manokey's claims are time-barred and, in any event, he has failed to adduce legally sufficient and admissible evidence establishing the required elements of his claims. ECF No. 37 at 1, 9–20. Mr. Manokey contends that he has established a prima facie case of discrimination and retaliation and that disputed issues of material fact preclude summary judgment. ECF No. 41-1 at 1, 4–7. The parties' contentions regarding the timeliness and the substance of Mr. Manokey's claim are addressed in turn below.

### A.    Timeliness

Before filing suit under Title VII and the ADA, a plaintiff must exhaust administrative remedies by filing a Charge of Discrimination with the EEOC or appropriate state or local agency. *Fort Bend Cnty., Tex.* v. *Davis*, 587 U.S. 541, 543-544 (2019); *Sydnor* v. *Fairfax Cnty.,*

*Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (explaining that the ADA is modeled after Title VII and incorporates its enforcement procedures, including administrative exhaustion).  Because Maryland is a deferral state, the time for filing a charge is extended from 180 to 300 days from the alleged unlawful employment practice.  *Equal Emp't Opportunity Cmm'n* v. *R&R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001) (citing 42 U.S.C. § 2000e–5(e) & (e)(1)).  A Title VII plaintiff alleging "discrete discriminatory or retaliatory acts must file [a] charge within the appropriate time period."  *National R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 122 (2002).  Each discrete act, "such as termination, . . . starts a new [300 day] clock for filing charges alleging that act."  *Id.* at 113-114.  The administrative exhaustion requirement "is not simply a formality."  *Chacko v. Patuxent Inst.,* 429 F.3d 505, 510 (4th Cir. 2005).  Instead, the filing of an EEOC charge "serves a vital function in the process of remedying an unlawful employment practice."  *Balas* v. *Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013).  This is because the filing of an EEOC charge provides notice to the employer and helps effectuate voluntary compliance with the law.  *Id*. at 407; *Sydnor.*, 681 F.3d at 593.

A complainant is entitled to a right-to-sue letter from the EEOC no later than 180 days after a charge is filed, and suit must be filed within 90 days of receipt of the letter.  *Fort Bend Cnty.*, 587 U.S. at 545 (citing 42 U.S.C. § 2000e–5(f)(1)); *Little* v. *North Carolina Dep't of Just.*, No. 23-1338, 2024 WL 701796, at *1 (4th Cir. Feb. 21, 2024).  The governing regulations provide that "[a] charge may be amended to . . . clarify and amplify allegations made therein." 29 C.F.R. § 1601.12(b).  "Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."  *Id*.; *see also Balas*, 711 F.3d at 408 (4th Cir. 2013) (stating that "persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they

may . . . file an amended charge with the EEOC").  However, "the issuance of a right-to-sue letter by the EEOC functions as a cut-off date for amendments because, at that point, 'there is no longer a charge pending before the EEOC which is capable of being amended.'"  *Merchant* v. *Prince George's Cnty., Md.*, 948 F. Supp. 2d 515, 523 (D. Md. 2013) (quoting *Balazs* v. *Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994)).

Here, as discussed *supra* I.B., Mr. Manokey filed his First Charge on April 28, 2021, which described the April 6, 2021 accident, subsequent absence from work, and discharge.  ECF No. 41-8 at 1.  The EEOC issued its right-to-sue letter with respect to the First Charge on April 30, 2021.  ECF No. 37-7.  Mr. Manokey declined to amend his First Charge before issuance of the EEOC's right-to-sue letter or to file suit afterwards within the prescribed 90-day timeframe.  Instead, Mr. Manokey filed his Second Charge on November 18, 2021, which replicated the allegations in his First Charge, providing additional details and expanding the alleged bases for discrimination.  ECF No. 41-9 at 1.

Any claims premised upon the right-to-sue letter issued in connection with Mr. Manokey's First Charge are untimely.  *Clarke* v. *DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 787 (D. Md. 2013) ("Because Clarke failed to file a civil suit during the 90-day period indicated in the right-to-sue letter issued in response to his 2006 charge of discrimination, he cannot now make claims based on the allegations in that charge.").  Further, Mr. Manokey cannot rely on his Second Charge, which encompasses the same set of facts alleged in his First Charge, to bypass the statute of limitations and "timely" file suit.  As the Fourth Circuit has instructed, "where the EEOC issues a second right to sue letter concerning alleged discriminatory practices already covered by a prior right to sue letter, the second letter is without effect."  *Khan* v. *Jenkins*, No. 85-2252, 1987 WL 36862, at *4, 814 F.2d 655 (Table) (4th Cir. Mar. 19, 1987); *see also Jackson* v. *Costco Wholesale Corp.*, No. CV 6:20-4415-DCC-KFM, 2022 WL 1446892, at *4 (D.S.C.

Feb. 14, 2022), *report and recommendation adopted*, No. 6:20-CV-04415-DCC, 2022 WL 1237678 (D.S.C. Apr. 27, 2022); *Howard* v. *American Inst. of Certified Pub. Accts.*, No. 1:08CV483, 2008 WL 5232794, at *3 (M.D.N.C. Dec. 12, 2008), *report and recommendation adopted*, No. 1:08CV483, 2009 WL 1173017 (M.D.N.C. Apr. 27, 2009). "From a policy standpoint, allowing a plaintiff to file multiple charges of discrimination with the EEOC regarding the same allegations and re-starting the 90-day time frame with each notice of right to sue would effectively allow plaintiffs to evade the statutory time frame and encourage plaintiffs to file multiple charges." *Jackson*, 2022 WL 1446892, at *5.

Although Mr. Manokey added additional bases for discrimination in his Second Charge (race and disability discrimination), he supplied no additional facts to support the alleged discrimination. *See supra* I.B. The Second Charge merely supplements the information and allegations contained within the First Charge and therefore cannot revive his time-barred allegations. *Jackson* v. *Costco Wholesale Corp.*, No. 6:20-CV-04415-DCC, 2022 WL 1237678, at *2 (D.S.C. Apr. 27, 2022) ("Although an unexpired Notice of Right to Sue may serve as the basis for a civil suit where the claims alleged in the underlying charge are different from those alleged in a stale charge, that is not the case here."). Mr. Manokey's Title VII and ADA claims are therefore untimely.[5] Even so, these claims also fail on the merits.

## B.    Race Discrimination (Count I)

Count I alleges that RCC discriminated against Mr. Manokey based on his race in violation of Title VII "when he was refused the opportunity to be grandfathered into his

---

[5] In opposition, Mr. Manokey argues that RCC failed to raise its timeliness argument as an affirmative defense. ECF No. 41-1 at 22. A review of RCC's Answer proves otherwise. ECF No. 6 at 8 (asserting statute of limitations and failure to administratively exhaust affirmative defense).

position."[6]  ECF No. 1 ¶ 30.  Title VII prohibits an employer from discriminating against any

individual "with respect to [ ] compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-

2(a)(1).  A plaintiff may pursue a Title VII claim by offering direct evidence of discrimination

or, as is more common, by offering indirect evidence through the burden shifting framework

adopted by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S.

792, 802 (1973).  *Coleman* v. *Whitley*, No. 21-1181, 2022 WL 16630570, at *1 (4th Cir. Nov. 2,

2022).  Under the *McDonnell Douglas* framework, a plaintiff has the burden of establishing a

prima facie claim of discrimination.  *Id.*  To do so, a plaintiff must allege "(1) membership in a

protected class; (2) satisfactory job performance; (3) adverse employment action; and

(4) different treatment from similarly situated employees outside the protected class." *Coleman*

v. *Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012).  RCC

does not dispute that Mr. Manokey was a member of a protected class and that it took an adverse

employment action against him.  ECF No. 37 at 9.  The Court need not consider satisfactory job

performance because Mr. Manokey cannot establish the fourth element, disparate treatment.

Among other things, a plaintiff must adequately plead that the adverse employment

action occurred "because of" their protected status.  A plaintiff may plead a prima facie claim

through the use of comparators, such as colleagues of a different race or gender who "were

treated more favorably under similar circumstances."  *Booth* v. *Cnty. Exec.*, 186 F. Supp. 3d 479,

486 (D. Md. 2016).  A comparator should be similarly situated "'in all relevant respects.'"

*Sawyers* v. *United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.2 (D. Md. 2013) (quoting *Crawford*

---

[6]  It is entirely unclear what "refused the opportunity to be grandfathered into his
position" refers to based on the parties' pleadings, memoranda, and exhibits.  In their
memoranda, the parties' arguments regarding the alleged race-based discrimination address
RCC's refusal to allow Mr. Manokey to work "light duty" and termination of his employment.
The Court's analysis will therefore focus on those allegations as well.

v. *Dep't of Corr. Educ.*, Civil Action No. 3:11CV430–HEH, 2011 WL 5975254, at *6 (E.D. Va. Nov. 29, 2011)).  Suitable comparators, for instance, "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Haywood* v. *Locke*, 387 Fed. Appx. 355, 359 (4th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original).

Here, Mr. Manokey has failed to meet his prima facie burden.  Mr. Manokey, who is African American (ECF Nos. 1 ¶ 31; 6 ¶ 31), contends that RCC offered a White employee, Mike Johnson, light duty after he was injured and did not terminate his employment.  ECF No. 41-1 at 12–13; *see also* ECF No. 41-4 at 355:5–356:12, 358:5–7.  Mr. Johnson is the only comparator Mr. Manokey identified.  ECF No. 41-1 at 358:8–12, 359:6–13.  Yet, there is little evidence that this comparator was similarly situated to Mr. Manokey "in all relevant respects" except for race.  *Sawyers*, 946 F. Supp. 2d at 442 n.2 (internal citation omitted).  While Mr. Manokey was a truck driver, his comparator "had several different jobs he performed," ECF No. 37-2 at 225:5–14, including as a "tire guy," *id*. at 225:15–17.  Furthermore, it is unclear whether the comparator had the same supervisor as Mr. Manokey or what process the comparator undertook to obtain "light duty."  *Id*. at 229:2–5; *Forrest* v. *Transit Mgmt. of Charlotte, Inc.*, 245 Fed. Appx. 255, 257 (4th Cir. 2007) (internal citations omitted) ("If different decision-makers are involved, employees are generally not similarly situated.").  Mr. Manokey also did not know what the comparator's qualifications were or what jobs he held before his injury.  ECF No. 37-2 at 225:5–11.  Viewing the evidence in the light most favorable to Mr. Manokey and drawing all reasonable inferences in his favor, RCC is entitled to judgment as a matter of law on this count because Mr. Manokey has failed to adduce sufficient evidence to establish the disparate treatment element.

C.     **Disability Discrimination (Count II)**

Count II alleges that RCC discriminated against Mr. Manokey based on disability when it failed to provide a reasonable accommodation and used Mr. Manokey's "new disability status to harass, demean, degrade, and humiliate" him.  ECF No. 1 ¶¶ 51–53.  The ADA prohibits discrimination against a "qualified individual on the basis of disability."  42 U.S.C. § 12112(a). A "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities[;] a record of such an impairment; or [ ] being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C); *Israelitt* v. *Enterprise Servs. LLC*, 78 F.4th 647, 653 (4th Cir. 2023).  To state a disability discrimination claim, a plaintiff must prove that they were (1) "a qualified individual with a disability"; (2) "w[ere] discharged"; (3) "w[ere] fulfilling [their] employer's legitimate expectations at the time of discharge"; and (4) "the circumstances of [their] discharge raise a reasonable inference of unlawful discrimination."  *Rohan* v. *Networks Presentations LLC*, 375 F.3d 266, 272 n.9 (4th Cir. 2004) (internal quotation marks omitted). "Evidence of all four of these elements is necessary to survive summary judgment."  *Reynolds* v. *American Nat. Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012).  The Court does not need to consider all the requirement elements because the undisputed material facts do not establish that Mr. Manokey was a "qualified individual with a disability."

The ADA defines a "qualified individual," as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The applicable regulations further provide that "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires."  29 C.F.R. § 1630.2(n)(1).  For example, a function is essential if "the reason the position exists is to perform that function."  *Id.* at § 1630.2(n)(2)(i).  "A plaintiff must show that [they] can perform the essential functions of the

job at the time of the employment decision or in the immediate future." *Lamb* v. *Qualex, Inc.*, 33 Fed. Appx. 49, 57 (4th Cir. 2002). A "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices." 42 U.S.C. § 12111(9)(B). An employer is not required to provide a reasonable accommodation that would cause "undue hardship," meaning "an action requiring significant difficulty or expense." *Id*. at §§ 12111(10)(A), 12112(b)(5)(A); 29 C.F.R. § 1630.9(a). "Plaintiff bears the burden of demonstrating that [they] could perform the essential functions of [their] job with reasonable accommodation." *Tyndall* v. *National Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994) (internal citation omitted).

Here, the undisputed material facts establish that Mr. Manokey was unable to perform the essential functions of his job as a truck driver, with or without reasonable accommodations, at the time of his discharge. Courts in this Circuit have repeatedly found that driving a truck is an essential function of a truck driver. *E.g.*, *Jordan* v. *Donahoe*, No. 3:12-CV-00054-JAG, 2013 WL 3893532, at *10 (E.D. Va. July 26, 2013), *aff'd*, 549 Fed. Appx. 213 (4th Cir. 2014) ("By no means could the plaintiff perform the essential functions of a truck driver without driving the truck."); *Thompson* v. *Heiner's Bakery*, No. 7:11-CV-00349, 2012 WL 1835709, at *3 (W.D. Va. May 18, 2012) ("[I]t is clear to the court that one of a delivery-truck driver's essential functions—the 'fundamental duty' of which the regulations speak—is to drive the company delivery trucks.").

Mr. Manokey himself testified that following the accident he "couldn't work." ECF No. 41-4 at 445:8–10. He further testified regarding his physical limitations after the accident:

> Climbing in and out the truck; I couldn't do that . . . I wasn't able to drive, sit for a long period of time; focus; pull and push on the levers that I needed to do to execute the position, [ ]; even turning your neck, looking at the mirrors . . . . You [are] supposed to turn your head every eight seconds from right to left, and that became an issue. And that's just to see traffic . . . .  Getting out, doing the walk-arounds . . . .  Even performing a pre-trip on the vehicle before and after your job, your day.  So, [ ] those were some of the things.

*Id*. at 445:18–446:9.  "Case law establishes that an inability to perform the physical duties of a job demonstrates that an employee is not qualified for the position."  *Famba* v. *Rite Aid of Md., Inc*., Civil Action No. SAG-18-3091, 2019 WL 6918488, at *4 (D. Md. Dec. 19, 2019), *aff'd*, 812 Fed. Appx. 168 (4th Cir. 2020) (discussing cases).

There is also no evidence in the record to suggest that Mr. Manokey was able to drive a truck with a reasonable accommodation, which is Mr. Manokey's burden to carry.  Rather, Mr. Manokey sought a position where he could remain "employed and earn some money and still help out in areas where it doesn't require a lot of heavy lifting, pushing, and pulling."  ECF No. 41-4 at 446:10–18.  This is not, however, equivalent to a reasonable accommodation.  "[T]he ADA does not require that an employer create a new position for a disabled employee," *Laird* v. *Fairfax Cnty., Va.*, 978 F.3d 887, 892 n.3 (4th Cir. 2020), nor does it "require an employer to reassign any of the essential functions of a disabled employee," *Stephenson* v. *Pfizer, Inc.*, 641 Fed. Appx. 214, 219 (4th Cir. 2016); *see also Myers* v. *Hose*, 50 F.3d 278, 284 (4th Cir. 1995) ("This circuit has made it clear . . . that the duty of reasonable accommodation does not encompass a responsibility to provide a disabled employee with alternative employment when the employee is unable to meet the demands of his present position.").  Because the undisputed material facts establish that Mr. Manokey was not a "qualified individual" within the meaning of the ADA, RCC is entitled to summary judgment on this count.

D.    Retaliation (Count III)

Count III alleges that RCC retaliated against Mr. Manokey in violation of the ADA after

he requested "light duty" following his work injury.  ECF No. 1 ¶ 57.  The ADA prohibits an

employer from retaliating against an employee who has "opposed any act or practice made

unlawful by [the ADA] or because such individual made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this chapter."  42

U.S.C. § 12203; *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53 (2006).[7]  To state a

retaliation claim, a plaintiff must allege that: "(1) that they engaged in protected conduct, (2) that

they suffered an adverse action, and (3) that a causal link exists between the protected conduct

and the adverse action."  *A Soc'y Without A Name* v. *Virginia*, 655 F.3d 342, 350 (4th Cir. 2011);

*Okoli* v. *City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011).

Requesting an accommodation constitutes a protected activity.  *Haulbrook* v. *Michelin N.*

*Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001).  An employee must, however, "make an adequate

request, thereby putting the employer on notice."  *Lashley* v. *Spartanburg Methodist Coll.*, 66

F.4th 168, 179 (4th Cir. 2023).  This is not a high bar.  It is sufficient if the employee

"communicates [their] disability and desire for an accommodation—even if the employee fails to

identify a specific, reasonable accommodation."  *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d

562, 581 (4th Cir. 2015).  A plaintiff must also prove a causal connection between the protected

activity and the adverse action to establish a retaliation claim.  *Penley* v. *McDowell Cnty. Bd. of*

*Educ.*, 876 F.3d 646, 656 (4th Cir. 2017).  Causation may be inferred when there is a close

temporal proximity between the two events.  *Id.*  "A lengthy time lapse between the employer

---

[7] "Given that the ADA's anti-retaliation provision is identical to Title VII's, the standard laid out by the Supreme Court for purposes of Title VII controls in this ADA case."  *A Soc'y Without A Name* v. *Virginia*, 655 F.3d 342, 352 (4th Cir. 2011) (Motz, J., concurring in part); *Laird* v. *Fairfax Cnty.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020).

becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe* v. *Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (internal citation omitted).

Once a plaintiff establishes a prima facie claim, the burden shifts to the employer to prove a legitimate, nonretaliatory reason for the adverse action. *Alexander* v. *Bloomingdale's, Inc.*, Civil Action No. PWG-17-3283, 2019 WL 2162286, at *17 (D. Md. May 17, 2019), *aff'd*, 780 Fed. Appx. 48 (4th Cir. 2019). "Once an employer offers a legitimate, non-[retaliatory] explanation for the challenged employment decision, 'the plaintiff must then have an opportunity to prove . . . that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for'" retaliation. *Equal Emp't Opportunity Cmm'n* v. *Sears Roebuck & Co.*, 243 F.3d 846, 852 (4th Cir. 2001) (quoting *Texas Dept. of Cmty. Affairs* v. *Burdine*, 450 U.S. 248, 253 (1981)).

Viewing the evidence in the light most favorable to Mr. Manokey and drawing all inferences in his favor, he has failed to establish a prima facie claim of retaliation. First, it is entirely unclear that a reasonable factfinder could conclude that Mr. Manokey's brief exchange with Mr. Carrier, RCC's Risk Manager, constitutes an "adequate request" for an accommodation. *See* ECF No. 37-2 at 279:1–4 ("And I got my answer as far as light duty. He said 'hell no.' So at that point, you know, I didn't have anything else to say."). Mr. Manokey acknowledged during his deposition that he did not ask Ms. Thompson, RCC's Human Resources Manager, or his supervisor for "light duty," nor did he directly inform anyone at RCC of his need to take extended leave, relying instead on communications from health care providers regarding his inability to work for a period of four (April 9–12, 2023) and fifteen (April 9–23, 2021) days. *See supra*, I.A. "While the burden of requesting an accommodation is light, not every work-related request by a disabled employee constitutes a request for accommodation under the ADA." *Kelly*

v. *Town of Abingdon, Va.*, 90 F.4th 158, 167 (4th Cir. 2024); *see also Burnett* v. *BJ's Wholesale Club*, 722 F. Supp. 3d 566, 578 (D. Md. 2024), *aff'd sub nom.*, No. 24-1228, 2024 WL 3042902 (4th Cir. June 18, 2024) (concluding that plaintiff failed to adequately request an accommodation where, among other things, there was no evidence that the human resources specialist was the appropriate person to receive an accommodation request or that the request was communicated to others at the company); *Parker* v. *Children's Nat'l Med. Ctr., Inc.*, Civil Action No. JRR-20-03523, 2024 WL 943438, at *26 (D. Md. Mar. 4, 2024) (finding that a doctor's note alone was insufficient to constitute an adequate request for an accommodation because it did not make clear that the plaintiff was requesting a disability-based accommodation).

Even if Mr. Manokey has satisfied his prima facie burden, the undisputed material facts RCC has established constitute a legitimate, nondiscriminatory reason for his termination. Mr. Manokey was warned by both Ms. Thompson on April 9, 2021, and Mr. Carrier on April 12, 2021, that he had failed to follow proper accident reporting procedures and failed to properly report his need for time off and medical treatment. *See supra* I.A. Decisions of this Court have found that warnings of employee's dissatisfactory performance were sufficient to establish the employer's legitimate, non-retaliatory reasons for termination. *E.g.*, *Alexander*, 2019 WL 2162286, at *17; *Myles-Anderson* v. *Emmes Corp.*, Civil Action No. GJH-15-2461, 2017 WL 881812, at *4 (D. Md. Mar. 3, 2017).

The undisputed material facts also establish that Mr. Manokey did not follow company policies with respect to leave and that such a failure could constitute a basis for dismissal. Section 11.01 of RCC's Employee Manual (2018 ed.) advises employees that they are "expected to be present at work on all scheduled workdays and to report to work on time." ECF No. 37-6 at 21. It further advises that it is the employees' obligation to notify the foreman whenever they will be late or absent and if the foreman is unavailable, employees must leave a message. *Id.*

Employees "must keep calling" until they reach the foreman or leave a message. *Id.* Section 11.01 further states that "[n]o absence is automatically considered to be 'excused.'" *Id.* Instead, the only absences "that are not counted towards disciplinary action are scheduled days off, vacations and holidays, bereavement leave, jury duty, military leave, and approved personal leave." *Id.* Employees are advised that "[r]epeated, unexcused absenteeism . . . may be cause for disciplinary action, up to and including termination of employment." *Id.*

Ms. Thompson and Mr. Carrier both attested that Mr. Manokey did not report to work or call the office for a period of at least eight days. ECF Nos. 37-4 ¶ 8 (from April 10–19, 2021); 37-5 ¶¶ 4–9 (from April 12–19). Mr. Manokey himself testified that he did not advise Mr. Carrier of his need for leave during their conversation on April 12, 2021; that he had no contact with anyone from RCC between April 12 and 19, 2021; and that he called his supervisor once, but did not reach him or leave a message. *See supra* I.A. This, too, is a legitimate, nondiscriminatory reason for Mr. Manokey's dismissal. *E.g.*, *Hampton* v. *Charlotte-Mecklenburg Bd. of Educ.*, No. 3:19-CV-409-RJC-DCK, 2021 WL 2383236, at *7 (W.D.N.C. June 10, 2021) (job abandonment and failure to follow policies regarding leave and reporting absences, along with related policy violations); *Moore* v. *Sprint Commc'n Co., LP*, Civil Action No. RDB-11-00290, 2012 WL 4480696, at *6 (D. Md. Sept. 27, 2012) (failing to comply with the company's leave policies).

Mr. Manokey, in turn, has failed to point to any evidence that RCC's proffered basis is pretextual. ECF No. 41-1 at 19 (concluding RCC's reasons "are intended to disguise the true, illegal motive behind his termination—retaliation against the Plaintiff's for requesting ADA accommodation"). "Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment." *Alston*, 2012 WL 665982, at *4. Therefore, RCC is entitled to summary judgment on this count.

**E.    Wrongful Termination (Count IV)[8]**

Count IV asserts the Maryland common law tort of wrongful discharge, which is premised upon allegations that RCC "dismissed [Mr. Manokey] from his position as a result of his workplace injury and his need for reasonable accommodations."  ECF No. 1 ¶ 77.  This count also alleges that RCC's decision "is directly related to [Mr. Manokey's] disability and race/color."  *Id.* at ¶ 79.  "In order to establish wrongful discharge, the employee must prove by a preponderance of the evidence, that (1) [they were] discharged; (2) [the] discharge violated a clear mandate of public policy; and, (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee."  *King* v. *Marriott Inter. Inc.*, 160 Md. App. 689, 700 (2005).  However, "if the relevant public policy is contained in a statute and the statute provides a remedy, the tort of wrongful discharge is not available."  *Bruce* v. *Fair Collections & Outsourcing, Inc.*, Civil Action No. CCB-13-3200, 2014 WL 3052477, at *6 (D. Md. June 30, 2014) (quoting *Porterfield* v. *Mascari II, Inc.*, 142 Md. App. 134, 141 (2002), *aff'd*, 374 Md. 402 (2003)); *see also Makovi* v. *Sherwin-Williams Co.*, 316 Md. 603, 605 (1989) ("Abusive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy.").  Maryland's highest court has explained that "allowing full tort damages to be claimed in the name of vindicating the statutory public policy goals upsets the balance between right and remedy struck by the Legislature in establishing the very policy relied upon."  *Makovi*, 316 Md. at 626.

---

[8]  In their memoranda, the parties argue the merits of a wrongful termination claim under the ADA.  ECF Nos. 37 at 14–15; 41-1 at 19–20.  The Court interprets this count as being brought under Maryland common law because the relevant section of the Complaint lacks any references to statutory authority and echoes the common law elements of wrongful termination.  *Compare* ECF No. 1 at ¶¶ 73, 80 ("Employment agreements in Maryland are presumptively at-will . . . [D]efendant's decision to terminate Plaintiff is against the public policy foundations of an at-will agreement") *with King* v. *Marriott Inter. Inc.*, 160 Md. App. 689, 700 (2005) (setting out the elements of a wrongful discharge claim under Maryland law).

Because Mr. Manokey asserts statutory claims under Title VII and the ADA, he cannot also advance a common law wrongful termination claim.  *Goel* v. *Tishcon Corp.*, Civil Action No. L-10-2536, 2011 WL 836680, at *3 (D. Md. Mar. 4, 2011) ("[T]he ADA and its Maryland analogue provide express statutory remedies for termination on the basis of a disability.").  RCC is therefore entitled to summary judgment on this count.

## F.    MFEPA (Count V)

Count V alleges a violation of MFEPA.  This count is devoid of any particularized factual allegations beyond incorporation of all preceding paragraphs.  ECF No. 1 ¶¶ 82–85.  It also introduces for the first time the topic of harassment, although only by way of presenting an overview of the standard under the statute.  *Id.* at ¶¶ 84–85.  MFEPA is the state analogue of Title VII and the ADA.  *E.g.*, *Parker* v. *Children's Nat'l Med. Ctr., Inc.*, Civil Action No. ELH-20-3523, 2021 WL 5840949, at *6 (D. Md. Dec. 9, 2021); *Allen* v. *Discovery Commc'ns, LLC*, Civil Action No. PWG-15-1817, 2016 WL 5404558, at *7 (D. Md. Sept. 28, 2016).  Courts generally analyze MFEPA claims under the same standards applicable to Title VII and ADA claims.  *Lowman* v. *Md. Aviation Admin.*, Civil Action No. JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019); *George* v. *Maryland Dep't of Corr. Serv.*, Civil Action No. WMN–14–2808, 2015 WL 847416, at *4 n.5 (D. Md. Feb. 25, 2015), *aff'd*, 615 Fed. Appx. 164 (4th Cir. 2015); *but see Townes* v. *Maryland Dep't of Juv. Servs.*, Civil Action No. JKB-15-1093, 2015 WL 5928114, at *7 (D. Md. Oct. 8, 2015) (noting that Maryland regulations provide stronger protection for the employee than the federal "interactive process" regulation) (citing *Adkins* v. *Peninsula Reg'l Med. Ctr.*, 224 Md. App. 115, 144 (2015), *aff'd*, 448 Md. 197 (2016)) (internal quotation marks omitted).  Mr. Manokey's MFEPA claim therefore fails for the same reasons as his Title VII and ADA claims.  To the extent this count attempts to make a harassment claim under MFEPA, no reasonable factfinder could find in Mr. Manokey's favor because of the dearth

of factual allegations and evidence in the record of harassment.  RCC is entitled to summary

judgment on this count.

**IV.    Conclusion**

      For the foregoing reasons, RCC's motion for summary judgment (ECF No. 37) is

GRANTED.  A separate Order follows.


Date:  February 28, 2025                                  _____/s/_____
                                                          Erin Aslan
                                                          United States Magistrate Judge